[CHANCERY.]

## BROWN and Others v. JACKSON.

The decisions of the board of Commissioners under the acts of Congress providing for the indemnification of claimants to public lands in the Mississippi Territory, (commonly called the Yazoo lands,) are conclusive between the parties in all cases within the jurisdiction of the Commissioners.

This determination reconciled with that of the Court in *Brown v. Gilman, ante, vol. IV. p.* 255.

Appeal from the Circuit Court of New-York.

This suit was brought in consequence of the decision of this Court in the case of Brown v. Gilman,

a *Ante. p.* 1.          b *Ante, vol. IV. p.* 255.

and for the general history of the facts, reference was made to that case.

The bill charged, that on the 13th of January, 1795, the State of Georgia was seised in fee of a certain territory within the boundaries of said State, &c. estimated to contain 11,380,000 acres, and bounded, &c.; that on the same day, by force of an act of the legislatuie of said State, passed on the 7th of January, 1795, George Matthews, the Governor, by letters patent, conveyed said territory to Nicholas Long and others, and their associates, called the Georgia Mississippi Company, reserving 620,000 acres for the use of the citizens of Georgia ; that afterwards, on the 20th of January, 1796, certain articles of agreement were made between the defendant Amasa Jackson and William Williamson, authorized by said Company, to sell—and George Blake and sundry persons, who became the New-England Mississippi Land Company ; that it was stipulated in the said articles, that on or before the 12th of February, then next, said Jackson and Williamson should fill up and complete to said B. and others, a deed of conveyance, (which had been executed by the G. M. Company in Georgia,) of all the right and title of the G. M. Company, derived from the State of Georgia ; that said Blake and others agreed by the articles to deliver their notes for the payment of two cents for each acre of land by them subscribed for, previous to the first of May, then next ; and for the further payment of one cent more for each acre, on or before the 1st of October, then next ; and a further payment of two and a half cents per acre, within twelve months from said 1st of May ; and a further payment of two and a half cents, &c. on the 1st

of May, 1798; and a further payment of two cents more, on the 1st of May, 1799; in the whole, ten cents per acre, &c. And thereby it was agreed, that as soon as said deed should be prepared, &c. said deed should be delivered by said defendant, Jackson, to some person appointed by said parties, to be held as an escrow, on condition that if the notes or moneys due on the 1st of May, should not be paid, the deed should be re-delivered, and the associates should not be liable for the failure of each other; but if the notes were paid, the deed should be delivered to said Blake, &c. who were then to be severally liable for their own notes. That on the 11th of February, 1796, said Blake and others entered into articles of association, by the name of the N. E. M. L. Company, by which it was agreed that Leonard Jarvis, Henry Newman, and William Wetmore, should be a committee to receive a deed from the defendant Jackson, and William Williamson, of the said lands, belonging to the G. M. Company, for the use of the N. E. M. L. Company; and should execute to the several subscribers thereto, deeds of their respective proportions, to hold as tenants in common, and also, a deed of trust to trustees, &c. and a board of directors should be appointed; and it was agreed the trustees should give each proprietor a certificate in the form, &c. which should be complete evidence, &c. and transferrable by endorsement. And to carry such articles of agreement into effect, a deed of indenture. dated 13th of February, 1796, purporting to be made by said Long and others, of one part, and Wetmore, Jarvis, and Newman, of the other, was executed, whereby they conveyed said territory, (excepting

said 620,000 acres,) to said W., J., and N., and the
survivor, in fee; and was delivered to G. R. Minot,
as an escrow, with an endorsement.   The first pay-
ment to be made on the 1st of May, aforesaid, was
duly made by every member, except, &c.; and the
defendant Jackson, and Williamson, personally deli-
vered said deed to said grantees, and endorsed theron,
&c. " free of conditions." That prior to said absolute
delivery, to wit, on the 10th of December, 1796, an
agreement of two parts was entered into between the
associates of the N. E. M. L. Company, and the
defendant, Jackson, wherein it was agreed that cer-
tain proceedings of certain scrip-holders of the G. M.
Company, being also members of the N. E. M. L.
Company, so far, &c. should be void ; and that the
associates of the N. E. M. L. Company should have
no control over papers of the G. M. Company ; but
would deliver to the defendant, Jackson, so many of
their certificates or scrip, as amount to 103,480 acres,
computing the whole at 11,380,000, as an equivalent
to the G. M. Company, for a loss by failure of Seth
Wetmore, &c. subscriber for 100,000, who had not
paid—said defendant, Jackson, to be accountable to
said associates for such portion of Wetmore's notes,
if recovered, as was equivalent to the debt assumed
to be paid, i. e. 10,348 dollars ; and thereupon said
defendant, Jackson, should deliver said deed of con-
veyance *absolutely*, and within, &c. procure from the
G. M. Company a confirmation, and deliver the same
to said associates; and the defendant, Jackson, cove-
nanted not to negotiate the notes until the confirma-
tion was procured.   And on the 17th of February,
1797, said defendant, Jackson, delivered to Wet-

1822.

Brown
v.
Jackson.

more, Jarvis, and Newman, a deed of confirmation from Long and others, reciting, &c. and ratifying said deed of conveyance of said tract of land, excepting said 620,000 acres. That on the 28th of February, 1797, an indenture of two parts, between Oliver Phelps and others, of the one part, and Jarvis, Newman, and Hull, of the other, was made, wherein reciting said conveyances, said associates conveyed to J., N., and H., and survivor, to hold said land in trust, &c. according to articles of agreement, constituting the N. E. M. L. Company. That William Wetmore, Jarvis, and Newman, still retained their shares of said purchase as subscribed, viz.: the said W. 900,000 acres, N. 2,000,000, and J. 500,000, who, to place their shares in the same condition, on the same 28th of February, 1797, by deed poll, released to *John Peck*, their several proportions, being $\frac{3,460,000}{11,330,000}$ in trust, to convey the same to J., N., and H., and survivor, to be held by them in trust for same uses as expressed in deed of associates; and on same day, said Peck conveyed the same land to said J., N., and H., to be held accordingly; by which means J., N., and H., were seised of all said tract; and H. the survivor, continued so seised until his deed to the United States. Trustees delivered certificates to the members of the N. E. M. L. Company, expressing, &c. whereby each became entitled to an equitable interest in his share.

That on the 31st of March, 1814, the Congress of the United States passed an act for the indemnification of claimants of public land in the Mississippi Territory, &c. by which act, 1,550,000 were appropri-

ated for persons claiming under the G. M. Company. That on the 25th of January, 1815, Congress made a supplementary act, appointing a board of Commissioners, *instead* of the first, to meet on the 4th Monday of January, &c.   That on the 3d of March, 1815, Congress, passed another act, &c. providing that in certain cases, the Commissioners might allow further time, not over two months from the 3d Monday in March, and to adjust all such claims as should be, or might have been released, &c. within the time limited; and empowering the President to issue certificates for *decided* claims.  That on the 18th. of January, 1814, the Members of the N. E. M. L. Company authorized their directors to release to the United States the whole claim of said company, under *the act of Georgia, and required the trustees to execute* deed, &c.; and certificates to be received therefor from the United States, should be held by the Treasurer, to be disposed of by order of the directors for the use of the claimants.   And on the 24th of November, 1814, W. Hull, sole surviving trustee, made a deed poll to the U. S. releasing, &c. territory described, being the same conveyed by Georgia, as aforesaid, and on the 25th of January, took the oath. And that the directors on the 7th of December, 1814, made their deed poll, releasing all right of said company and the members thereof, to said land; also, all claim to money, &c. to the United States, in fee.

The said directors conformed in all things, &c. and became entitled to the whole indemnity, provided, &c. amounting to 1,550,000.  Nevertheless, said Commissioners did decree that certain in-

1822.

Brown
Jackson.

1822.
Brown
v.
Jackson.

dividuals holding scrip under the N. E. M. L. Company, to the amount of 2,795,017 acres in all, who personally applied to said Commissioners, among whom was said defendant, Jackson, who (said Jackson) held scrip to the amount of 691,677 acres, should receive their indemnity *directly*, without permitting the same to go through the hands of the directors, &c.; and said individuals have received their several proportions accordingly, estimating the same at $13 62 cents per acre, deducting a certain sum for expenses. *Whereas* said Commissioners did not estimate said expenses correctly, by a sum exceeding 7000 dollars, and no provision was made to compel said individuals to contribute to *future* expenses, or any subsequent diminution of the remaining amount of indemnity, as hereafter stated, which reduces the amount to more than two cents per acre less than the amount received by said individuals. Commissioners did *secondly* decree that indemnity upon 957,600 acres, amounting, at the rate of $13 62 cents, to $130,425 12 cents, *should be deducted from claims, by the N. E. M. L. Company, on account of certificates issued to its members, who appeared to be in default in payment of purchase money to the G. M. Company;* and determined said certificates to be bad, and the parties claiming under them not entitled to indemnity; and allowed said sum of $130,425 12 cents, to be issued to the defendant, Jackson, for the benefit of himself and the other members of the Georgia Mississippi Company, or to him for his own benefit, or on pretence that he was entitled to it as being a creditor of said G. M. Company, whereby manifest

injustice was done to the N. E. M. L. Company, because:—

(1.) No deduction was made or allowed by the Commissioners from the said sum of $130,425 12 cents for expenses incurred in managing the affairs of said company. (2.) It appears among the notes exhibited by the said Jackson, as given for purchase money to the G. M. Company, on which indemnity was claimed as unpaid, there were certain notes of said Seth Wetmore, for 25,760 dollars, which, at the rate of ten cents, would have been the price of 257,600 acres ; whereas, in truth, said Wetmore was purchaser for 100,000 acres, and no more, as appears by his *original deed*, so that the greatest part of said notes must have been given for other consideration. (3.) It appears by the decrees, indemnity was allowed to Jackson for 957,600 acres, and by certificates filed by the Commissioners, that there issued certificates to individuals for 2,795,017 acres; and by certificates issued to other original purchasers, and delivered by the plaintiffs to the Commissioners, that there is still 7,734,983 acres entitled to indemnity under said acts. But these quantities amount to 11,487,600 acres, which is 107,600 acres more than the whole purchase of 11,380,000 ; so that 107,600 acres too much have been allowed to the said Jackson, even upon the principles of the Commissioners, amounting at the rate of $13 62 cents per acre, to $14,655 12 cents. (4.) The Commissioners were wrong in determining, that persons claiming under certificates of purchasers who had not paid, should lose their indemnity. One

Mary Gilman, holder of three scrip certificates, under the N. E. M. L. Company for 20,000 acres each, the same having been issued to R. Williams, and endorsed, he being assignee and grantee of William Wetmore, an original purchaser in default, whose unpaid notes were before the Commissioners, as appears by the 3d decree, which notes entered into the reason of deducting from indemnity to said Jackson, exhibited to the Circuit Court of the U. S. for Massachusetts District, her bill in equity; and recovered for the whole amount of her claim against the plaintiff, without deducting on account of the proportion of indemnity she might be entitled to claim of individuals who received indemnity in person, which decree was affirmed in the Supreme Court. By reason of all which, the plaintiffs were entitled to recover of Jackson the whole $130,425; also, his proportion of the expenses of said Company, since said decrees were made, including said $7000 as aforesaid, and also, the costs recovered by M. Gilman, and all future expenses. The bill further stated, that the defendant, Jackson, ought to deliver all the stock or indemnity of said 1,550,000 dollars, excepting thereout so much as he is entitled to, as holder of scrip under the N. E. M. L. Company.

The defendant (Jackson) in his answer, admitted the several conveyances set forth in the bill, and that the Commissioners, by first decree, decreed to reserve indemnity upon 691,677 acres on account of scrip of the N. E. M. L. Company, then in the hands of the defendant, and did so reserve it; but avers the truth to be, that neither he, nor any other person in his stead, or by his direction, received any part of indemnity for

claimants under the G. M. Company. That the certificates of the N. E. M. Land Company came to his hands as follows: at the time of maturity of several of the notes, such notes being dishonoured, or the parties being insolvent previous to maturity, they proposed to defendant (who agreed) to pay such notes by certificates of the N. E. M. L. Company; that accordingly, scrip, to the amount of 691,677 acres, was delivered to him, and notes to equal amount were given up by defendant, and that he never had any other certificates of the N. E. M. L. Company, and these have been given up to the Commissioners, and appropriated by them to account of the G .M. Company. Admitted that Commissioners deducted from indemnity awarded to the individuals a sum as their proportion of expenses of the N. E. M. L. Company; but avers, that said N. E. M. L. Company produced statements, and litigated before the Commissioners as to such expenses, and such sum as was allowed, was allowed after deliberation: but insisted, that the decree as to expenses is conclusive as to the amount, and that any portion of any extra expenses could not be recovered of him; and that no deduction or provision for payment of future expenses of the N. E. M. L. Company, ought to have been made. Commissioners awarded that, indemnity upon 957,600 acres, amounting to $ 130,425 12 cents, should be deducted from the whole amount claimed by said N. E. M. L. Company, on account of certificates issued by the Company to purchasers who were in default of payment to the G. M. Company; that they determined such scrip void, and parties claiming under it

should lose indemnity : *but* avers he did not re-ceive certificates for said $ 130,424 12 cents, on be-half of the G. M. Company, or himself, *as such mem-ber* ; on the contrary, he was not then a member thereof, and never received any part of indemnity or certificates therefor, *save for the amount found due him for the balance of his account with the G. M. Company, as their agent;* That, as to said award, there remain-ed, at the time it passed, unpaid notes of members of the N. E. M. L. Company, given for purchase money to the amount of $95,760, and the indemnity of $130,421 25 cents, was ordered on account of such un-paid notes : that he delivered up said unpaid notes, be-ing required so to do; that the said Company contest-ed the allowance, and are *concluded by the decree.* That, after said decrees, deducting the amount of the unpaid notes, and also the amount of scrip of said Company, taken in payment of other notes, and held by defendant as aforesaid, the members of the Com-pany, separately and individually, according to their shares, did apply to the Commissioners, and received certificates entitling them to the indemnity. That the Commissioners made no allowance on said $130,425 12 cents, on account of expenses incurred by plain-tiffs in managing the affairs of the Company, and in-sists they did right, and their decree is conclusive. That it appeared from the schedule to the articles of agreement between him, Williamson, and Blake, of 26th January, 1796, that Seth Wetmore subscribed for only 100,000 acres. That between the date of said agreement, and the complete delivery of said notes to him, many changes were made *in the* amounts and purchasers from those in the schedule :

that it appears by an account of said notes and scrip, kept by the defendant, (*a true copy of part whereof* was annexed) that defendant received from Seth and Samuel Wetmore, notes to the amount of $25,760 together with scrip of Company, to amount of $11,740 making $37,500, which is the purchase money of 375,000 acres, and *therefore* Seth and Samuel were interested in the purchase to that amount. Whether notes were made jointly by them, or as principal and endorser, could not answer, but believes jointly, *because*, in said amount in other instances he distinguished whether drawers or endorsers. That he took an oath before Commissioners, that said notes were not taken on any other account than purchase money of said land. And avers the same in answer ; and *therefore* whether Seth or Samuel were joint drawers, or one drew and the other endorsed, or were reciprocally drawers and endorsers for each's part, or whether Seth was really interested to the amount of the notes, cannot answer; but insists, that being in his hands, and given for no other consideration, whether given for his own interest or that of another, was immaterial, and the decree was right. That, after passing the first decree, defendant was summoned as witness before the Board, and required to deliver up all vouchers, papers, notes, scrip, and accounts, touching purchase by the N. E. M. L. Company ; he complied, and the Commissioners stated an account between him and the G. M. Company, leaving a balance of $24,631 90 cents, in his favour. In stating the account, the G. M. Commissioners credited the N. E. M. L. Company with the total amount of sales to the Company, de-

ducting a number of acres of W. Williamson, and de-
bited the Company thus; (1.) For 292 full scrip of said
Company, which scrip was received by defendant,
in payment for part of the purchase money, engaged
to be paid by members of the N. E. M. L. Company;
and it having depreciated in consequence of the repeal
of the act of Georgia, and purchased by the members
of the N. E. L. M. Company, at a low price, was re-
ceived in payment as aforesaid, by defendant, at their
original value. (2.) For amount of unpaid notes, as
delivered to Commissioners. (3.) For said Compa-
ny's proportion of loss on notes of members of the N.
E. M. L. Company, consequent to compromise, to
which he was compelled by said repeal, nine-tenths
of which loss only was charged to said Company,
the other upon defendant's commissions. (4.) For
amount of scrip of N. E. M. L. Company, delivered
up to Commissioners. (5.) For commissions at 10
per cent. on sales to the N E. M. L. Company ;
and that the Commissioners by decree (copy exhibit-
ed) awarded said balance to defendant, and issued
to him a certificate for so much indemnity; which
sum was the whole amount of the indemnity received
by defendant, or any other person for him on his own
account, or the account of any persons or company
whatever. Insisted, that said decree is wholly irre-
versible; and defendant having received the amount
of indemnity, as agent of the G. M. Company, could
not be called upon to account to complainants. Admits
that indemnity was reserved upon 957,600 acres, on
account of notes unpaid, but never allowed to defen-
dant, as stated in bill. Avers the same was the true
amount of unpaid notes. That according to the

schedule annexed to bill of certificates surrendered by individuals, it is certified that the total amount so surrendered was upon 2,795,017 acres ; but whether said schedule is a true list, or whether the amount stated is the true amount, defendant is ignorant. As to the amount of certificates by members represented by complainants, defendant is ignorant ; but avers, there was no allowance to him, nor was there a reservation of indemnity for 107,600 acres too much, but the excess (if any) between the total amount of acres reserved for individuals, or for unpaid notes, together with the amount represented by plaintiffs, and the original purchase, is owing to error in amount surrendered by individuals, or the amount represented by plaintiffs.

Edward Stow, a witness examined on the part of the plaintiff, testified, that the agent of the Georgia Mississippi Company, and the members of the N. E. M. L. Company, agreed, that the deed of the land purchased of the former, should remain, for certain purposes, an escrow ; and on the failure of Seth Wetmore, to pay his notes of $10,000 for his 100,000 acres of land, the defendant, Jackson, as agent of the G. M. Company, declined delivering said deed to the N. E. M. L. Company, unless they would agree to deliver him, or some other agent of the G. M. Company certificates for 103,480 acres, in the stock of the N. E. M. L. Company ; and in consequence thereof, they entered into a contract with the defendant, Jackson, on the 10th of December, 1796, to deliver to him, or some other such agent, said certificates ; but, as they have never been demanded, the certificates have never been issued. In said contract

the defendant, Jackson, stipulated to account with the N E. M. L. Company, for such sums as he might recover from the notes. The amount of the expenses incurred by the Company, when the directors' accounts were exhibited to the Commissioners, in 1815, was, in Mississippi stock, $153,030 90, and in specie, $20,744 36; but $1,500 was by them deducted from the last sum, which had been charged to support the future expenses of the Company. In part of such expenses, in Mississippi stock, the Company received from their agents, on account of the proportionate part thereof, due from the proprietors who surrendered individually their certificate to the Commissioners, $36,355 22-100, 10-100, in certicates of that stock ; and for the debt incurred in specie, $4,688 26, in specie. Seth Wetmore, in and by the contract of the 26th January, 1896, between the defendant, Jackson and Williamson, agents of the G. M. Company, of the one part, and the N. E. M. L. Company, of the other part, signed and executed the same, as proprietor of 100,000 acres of land, in said Company, and no more ; and a deed was executed to him by the Committee of the Commissioners for that number of acres : and he appeared, by the records and books thereof, to be a proprietor of that number, and no more. The number of certificates, on which the indemnity was received from the Commissioners, by individual proprietors of the Company, was 262, and the number of acres, 2,795,017. The whole number of acres of land, in the N. E. M. L. Company, was 11,380,000 ; the indemnity on 957, 600 acres of which was awarded to Jackson and others, being $130,445 12. The indemnity on

2,795,017 acres was awarded to certain proprietors of the Company, who surrendered their certificates individually, being 380,681 31-100 54-100. The indemnity on the remaining 7,627,383 acres was awarded to the N. E. M. L. Company, being 1,038,849, 56-100 46-100 ; which was on 107,600 acres less than it was entitled to, as the number of acres held by the proprietors represented by the directors, was at the time said awards were made, and now is, 7,734,983 acres ; and there could be no error in the number, as the books have been regularly kept. The witness being interrogated whether among the notes surrendered to the Commissioners by defendant, there were any notes of Seth Wetmore: answers, that at the request of the directors, the Secretary of the Commissioners at Washington had transmitted to them copies of ten notes, amounting together to $25,760, signed by Seth and Samuel Wetmore ; and it was understood from him that they made a part of the notes presented by the defendant, Jackson, to the Commissioners, and represented by him to have been unpaid by the signers of them ; but whether the notes were received by any members of the N. E. M. Land Company, in payment of the land they purchased of the G. M. Company, the deponant could not answer. The expenses of the N. E. M. L. Company, since its accounts were exhibited to the Commissioners, exceed $4000, and are daily accumulating. Besides, the members of the Company represented by the directors, have been obliged to pay upwards of $80,000 in Mississippi stock, out of their own indemnity to the holders of the certificates

in the Company which were considered bad by the Commissioners.

Being cross-examined, the witness stated, that S. Dexter and B. Joy appeared before the Commissioners as agents of the N. E. M. L. Company, and exhibited the accounts of the Company, showing the amount of the expenses incurred in the pursuit of its claims, and endeavoured to obtain a full proportion of the said expenses from the individual proprietors who had surrendered their scrip, but did not succeed in this endeavour; as in the apportionment of the expense, a manifest error was committed, it being apportioned on 11,330,000 acres, when it ought to have been apportioned on 11,380,00 minus 957,609 acres, viz. on 10,422,400 acres; the Commissioners exempting the indemnity awarded to the defendant, Jackson, and others, on account of the said 957,600 acres, from the payment of any part of the expenses incurred by the Company. The witness repeated the same statement respecting the proprietary interest of Seth Wetmore, as is contained in his direct examination, with this addition, that Wetmore signed the deed of trust to the trustees of the Company, as a proprietor therein, of 100,000 acres only, and does not appear to have been a proprietor in the Company at any time, in his own name, nor jointly with Samuel Wetmore, or any other person, for more than said 100,000 acres of land therein, which was in his own name only. Nor does it appear by the records of the Company that Samuel Wetmore in his own name, or jointly with any other person, was ever

a proprietor, directly or indirectly, of the Company, for any land therein.

1822.

Brown
v.
Jackson.

A decree was entered in the Court below dismissing the plaintiff's bill, *pro forma*, by consent, and the cause was brought by appeal to this Court.

Mr. *D. B. Ogden*, for the respondent, argued, *Feb. 19th.* (1.) That there was a defect of parties to the suit, both plaintiffs and defendants. There is no express averment that the plaintiffs are the present directors of the N. E. Mississippi Land Company. Nor are the plaintiffs trustees in the view of a Court of equity, nor the *cestui que trusts*. There is no example of an agent filing a bill, in his own name, for the benefit of his principal. The release to the United States, under the act of Congress, left the property a personal fund. The association has then become a mere partnership, and all the partners must be before the Court.*a* So also as to the defendant; he is a mere agent of the Georgia Mississippi Company. His principals ought therefore to be made parties defendants: and if it be insisted that the defendant is personally liable as having received money to the use of the plaintiffs, an action at law would lie for money had and received. (2.) Even if all the proper parties were now before the Court, the decrees of the Commissioners, acting within the sphere of their authority, would be conclusive. In the former decision of this Court connected with the same

*a* 2 *Bro. Ch. Cas.* 331.

subject, the true distinction is stated that, as to the party there suing, and as to the subject matter of that suit, the decrees of the Board were *res inter alios acta*.[a] But here the case was within their jurisdiction under the very terms of the act of Congress; the same parties were heard before them, as to the same controversy ; and it would overthrow all sound principles to permit their decision to be attacked either directly or collaterally.

Mr. *Webster*, contra, insisted, (1.) That the plaintiffs were sufficiently described in the bill as directors, and that it was within the discretion of a Court of equity, where the parties were numerous, to permit some to sue for all. Such is the practice in the familiar case of parishioners, societies, commercial companies, and others of the kind. But here the plaintiffs are trustees of the fund which has been produced by selling the land. Besides, the equity jurisdiction of the Federal Courts would be imperfect, and incompetent to the purposes of justice, unless parties merely formal were dispensed with. As all the parties on one side, must be citizens of one State, and all the parties on the other side, citizens of another, this Court has held that the Circuit Court may dispense with merely formal parties, wherever the real merits of the cause can be determined, without essentially affecting the interest of absent persons.[b] (2) The plaintiffs are not concluded by the decrees of the Commissioners. The former decision of this

a Brown v. Gilman, 4 *Wheat. Rep.* 255. S. C. 1 *Mason*, 191.
b Russell v. Clark's Ex'rs, 7 *Cranch*. 98.

Court proceeded entirely upon the ground, that their decrees were not conclusive, and it cannot be reconciled to the notion of their conclusiveness.[a] Besides, an accurate examination of the acts of Congress will show that the present case was not within the jurisdiction of the Commissioners. Here the learned counsel entered into a minute analysis of the statutes, in order to support this position.

Mr. Justice LIVINGSTON delivered the opinion of the Court.

This suit was commenced in the Circuit Court for the Southern District of New-York, where a decree, *pro forma*, was pronounced dismissing the bill, from which sentence the present appeal is taken.

From the very great and unusual length of the appellants' bill, and the generality of its prayer, which points to no particular relief, it is not easy to say to what extent they originally contemplated a decree against the respondent.

The material facts of this case are the same with those in the case of *Brown* v. *Gilman*, *(4 Wheat. Rep. 255.)* In addition to the detail there given it appears that Jackson, who had been agent of the Georgia Company, had in his possession on the 29th of June, 1815, certificates of the New-England Company, to the extent of 691,677 acres which came into his hands as follows: Several of the notes which had been given by members of the New-England Company being dishonoured, or the parties in-

1822.

Brown
v.
Jackson.

*March 5th.*

---

[a] Brown v. Gilman, 4 *Wheat. Rep.* 255.

solvent, it was proposed by them to Jackson, and acceded to by him, as agent as aforesaid, that such notes should be returned to the makers, on their transferring to him an equivalent amount in lands of the serip or certificates of the New-England Company ; such certificates were accordingly transferred to him, for the number of acres just mentioned, whereupon notes equal in value, computing the land at ten cents per acre, were delivered up by Jackson.  For this number of acres an indemnity was reserved by the first decree of the Commissioners, out of the whole indemnity claimed by the New-England Company, no part of which appears ever to have been received by Jackson as a person entitled to any portion of the indemnity, as such an indemnity was also reserved for the certificates in the New-England Company, issued to such purchasers as appeared not to have paid the purchase money to the Georgia Company.  The deduction on this account from the indemnity awarded to the New-England Company, amounted to 130,425 dollars and 12 cents, and was made because the Commissioners were of opinion that such certificates were void, and that the parties claiming under them should lose their indemnity ; or, in other words, that the Georgia Company had a lien to that extent on the lands which had been sold to the New-England Company.

It appears, further, that neither Jackson, nor any one for him, ever did receive certificates for the said sum of 130,425 dollars and 12 cents, nor for any part thereof, on behalf of the said Georgia Company,

or any of them, or for himself, he not being then a member thereof; and that he never did, at any time whatever, receive any part or portion of the indemnity provided by Congress, nor certificates for any portion thereof, save for the amount due to him on the balance of his account as agent for the Georgia Company, which was settled by the Commissioners at 24,831 dollars 90 cents; that for the amount allowed to the Georgia Company as an equivalent for the unpaid notes aforesaid, and also for the scrip taken back by Jackson, as agent as aforesaid, in payment of other notes, the members of that Company who were entitled to the sums so deducted did separately apply to, and did receive from, the Commissioners, certificates entitling them to their respective proportions of the indemnity so awarded in their favour; and that the notes before mentioned, and the scrip received in lieu of those which were given up, were by the Commissioners' orders delivered by Jackson into their hands.

This suit appears to have been suggested by the judgment of this Court in the case of *Brown* v. *Gilman*; and a belief on the part of the plaintiffs, that Jackson had received the whole sum of 130,425 dollars 12 cents, awarded to the Georgia Mississippi Land Company, on account of the notes which had been given to them, by the members of the New-England Land Company, and which remained unpaid by them, and also, the indemnity for the 691,677 acres aforesaid. Although there be no specific prayer in the bill to have these sums decreed to the complainants, it is difficult to perceive any

other adequate objects of litigation between these parties. As these grounds of relief were not much insisted on at the bar, the Court might be justified in considering them as abandoned, and pass at once to an examination of the appellants' title to the whole or any part of the sum which was awarded to the respondent, and received by him as agent of the Georgia Mississippi Company. But as all the facts which exist in the case are probably before us, and as the appellants may expect an opinion on the whole of their bill, which may also prevent future litigation not only between the parties now here, but between the appellants and the Georgia Company, and the individual members of these two Companies, it may be useful to inquire whether the appellants have any remedy either against Jackson, or the members of the Georgia Company, collectively or individually, in consequence of any alleged mistake in distribution or apportionment of the sum allowed by government, for the indemnification of claimants of public land in the Mississippi Territory. A proper decision of this question will depend not so much on an examination of the correctness of the several acts and doings of the Commissioners, as of the powers conferred on them by law: for as no appeal is given by any of the acts of Congress on this subject, to any other tribunal, and as all the parties concerned have submitted to their jurisdiction, this Court claims no right to review or disturb any judgment or decision, in any of the cases in which they have acted, within the authority delegated to them. Considering, indeed, the very great inconveniences

*Decisions of the Commissioners, how far conclusive.*

which would result from a different course, and the fruitful source of litigation, which would be opened between the parties whose rights have been settled by them, if their decision were not conclusive, the Court would feel reluctant, unless in a very clear case, to say that they had transcended the limits prescribed them by the legislature.

The first law on this subject is that of the 31st of March, 1814. By this act, it is declared, that every person, or persons, claiming public lands under the act of the State of Georgia, passed 7th of January, 1795, who have exhibited the evidence of their claims, to the Secretary of State, conformable to a preceding act of Congress, shall be allowed until the first Monday of January then next, to deposit in his office a sufficient legal release of all such claim or claims to the United States, and the Secretary of State, the Secretary of the Treasury, and the Attorney General of the United States, for the time being, were thereby constituted a board of Commissioners to adjudge and determine upon the sufficiency of such releases, and also, to adjudge and *finally* determine upon all controversies arising from such claims so released, which might be found to conflict with, and to be adverse to, each other. On the 23d of January, 1815, a supplemental act was passed, by which the President of the United States was authorized, by and with the advice and consent of the Senate, to appoint three persons to act as Commissioners under the former law, in place of the two Secretaries and the Attorney General, who were to execute all the powers granted to, and to

perform all the duties enjoined upon, the original Board of Commissioners. The persons thus appointed were, from time to time, to certify and report to the President of the United States, as to the sufficiency of the releases which should be made, and the claims which they should finally adjudge and allow. By a third act passed the 3d of March, 1815, the Commissioners are authorized to admit, and *finally* settle, all such claims as have been, or may be, within the time limited, duly released, assigned, and transferred to the United States. And the President is authorized, from time to time, to cause to be issued such certificates of stock as are specified in the first act and the supplement thereto, to such *claimant* or *claimants*, whose claim may be decided and reported by the Commissioners, on *receiving* such report in relation to such claim from the Commissioners.

The Court will now proceed to examine those proceedings of the Commissioners, which are complained of by the appellants, which, it is believed, will be found to be not only within the spirit, but within the letter of the powers expressly delegated to them.

One ground of complaint is, that there was deducted from the indemnity allowed to the New-England Company, a sum equal in value to 691,677 acres, account of scrip of this company, then in the hands of the respondent, and which had been delivered to him in payment of notes which had been dishonoured, or the parties to which had become insolvent. It cannot be a question that the holders of

these scrip, whether Amasa Jackson, the Georgia Company, or any other person, had as just and valid a claim for the quantity of land therein mentioned, upon the indemnity set apart by Congress, as the New-England Company would have had for the same scrip, if they had not been assigned to Jackson. Their returning to the hands of the original vendors, or their agent, could make no difference. The holder or holders, whoever they might be, could not but be regarded within the obvious and plain meaning of the act of the 31st of March, 1814, as a person or persons having a *claim* on the lands in question; and the Commissioners could not, without a violation of duty, have refused to take cognizance of it. It might have been a question, whether the stock which was the portion of the indemnity intended for the Georgia Company, as the holder of these certificates, should not have been transferred for their use, to the directors of the New-England Company; that, however, was a subject on which the Commissioners were competent to decide, as well as on the validity of the claim itself. There is nothing in the conduct of the Commissioners, in this particular, inconsistent with the act under which they were sitting: on the contrary, the act appears to contemplate a settlement by them of an individual, as well as of a company or joint claim; for the President is to issue certificates to such claimant or claimants, whose claim may be decided and reported by the Commissioners. All the Commissioners had to do was to decide on the validity of the claims, however subdivided, and to determine on the sufficiency of the release made by such

1822.

Brown
v.
Jackson.

claimant to the United States.   The Court is, there-
fore, of opinion, that this claim was clearly within
the jurisdiction of the Commissioners, and that their
award on the subject is final and conclusive.

The next subject of complaint in the appellants'
bill, is the award of the Commissioners, that the in-
demnity upon 957,600 acres, amounting to 130,425
dollars 12 cents, should be deducted from the amount
claimed by the New-England Company, on account
of certificates issued by that company to purchasers
who had not paid their notes to the Georgia Missis-
sippi Company.   These scrip the Commissioners
determined to be void, and that the parties claiming
under them should lose their indemnity.   The Geor-
gia Company, thinking they had a lien on the lands
sold by them to the New-England Company, to the
extent of the same thus unpaid, appear, as well as the
New-England Company, as claimants before the
Commissioners, who being of opinion that the former
were entitled to the indemnity, *pro tanto*, decreed
accordingly.   A decision of this question was also
clearly within the power of the Commissioners.   The
act made no distinction between an equitable or a legal
claimant.   To satisfy the words of the act, it was suf-
ficient that both parties were claimants, and if these
claims were found to conflict with, and to be adverse
to each other, as was the case here, the Commissioners
were to adjudge, and *finally* to determine on them.
On this point, also, the Court is of opinion that the
decision of the Commissioners, as between the New-
England and Georgia Company must be regarded
as conclusive.   Nor does this opinion in any degree
conflict, as has been supposed, with our decision in

the case of *Brown* v. *Gilman*. It is true that the Court, in that case, did say, that the lands which had been granted to the New England Company were exempt from any lien of the Georgia Company, notwithstanding the non-payment of these notes, to which opinion it still adheres; it was not, however, on that ground, or with any view of disturbing the decision of the Commissioners, that it decreed in favour of Mrs. Gilman. This decision proceeded on the ground, not of an error in the Commissioners, but of a wrong done to Mrs. Gilman by the New-England Company, in the distribution which they made of the indemnity awarded to them. This Court thought that the sum deducted by the Commissioners from the indemnity claimed by the New-England Company, was chargeable on the fund generally, and not individually on the share of Mrs. Gilman. Her share was exempted from bearing the whole of the loss, because, according to the laws of the association of the New-England Company, she had received a certificate which on its very face purported to be, and was regarded as complete evidence of title, whether the person from whom she had purchased had paid his note or not. After issuing to her a certificate in the form which had been devised, in order to render them more valuable, and to enable the holders the more easily to dispose of their interest, the Court thought that whatever the Commissioners might think proper to do, as between the two companies, the New-England Company was bound to let Mrs. Gilman in for a proportion of the indemnity awarded to them, notwith-

1822.

Brown
v.
Jackson.

The present decision not inconsistent with that in *Brown* v. *Gilman*.

standing a failure of payment by any person under whom she claimed.

If the Court be correct thus far, there is an end of every demand by the appellants on the respondent: for if the Commissioners had a right to make the deductions which they did from the indemnity claimed by the New-England Company, it can be of no importance to them how the stock, which has thus been deducted, has been disposed of. But even if the Commissioners had exceeded their authority, and improperly awarded the sums which they did to the Georgia Company, it would be difficult to afford the appellants any relief against the respondent. He has received nothing more than the sum awarded to him for his services as agent of the Georgia Company. Whether this sum were too small or too large, is a matter between him and that Company; but it cannot here be a proper inquiry out of what fund it was paid. If any persons could be liable to the appellants for a mistake of the Commissioners, it ought to be shown in whose favour the deduction from the indemnity claimed by the New-England Company was made, and not those to whom the stock awarded to them may have been transferred, in satisfaction of the debt of the Company. This would be giving what the Court would not be disposed to do, even if the proceedings of the Commissioners were not conclusive to the New-England Company, a lien on the stock awarded to the Georgia Company, into whosoever hands it may be passed.

It is also stated in the bill, that 107,600 acres have been allowed to Jackson, which, even upon the prin-

ciples established by the Commissioners, were too much, and that this sum amounted to 14,655 dollars 12 cents, and this sum it is alleged ought to be decreed to the appellant. It is a sufficient answer to the allegation to say, that there is no proof of such allowance being made to the respondent, and that his answer, which is uncontradicted, denies that he ever received it. As to the allegation of his being liable for $1,163 90 cents, for his portion of expenses chargeable on his stock in the New-England Mississippi Land Company, and for the sum received as indemnity on Seth Wetmore's purchase beyond the amount of his notes, the same answer may be given. It does not appear that he ever was a member of the New-England Company ; and by his answer, which stands uncontradicted, the Court is informed that he never received out of the indemnity any other sum than the 24,831 dollars 90 cents, which was awarded to him not as a member of either Company, but for his services as agent of the Georgia Mississippi Land Company.

The Court, however, does not mean to be understood as saying, that the appellants, or those who represent the New-England Mississippi Land Company, may not have a remedy against the Georgia Mississippi Land Company for a contribution towards the loss which the former has sustained by the decree in favour of Mrs. Gilman, or for other losses of a similar nature. In this respect, as far as the indemnity extended, which the latter received for the scrip which they held, by their agent, Jackson, they must be considered as coming in under the New-England

Company, and contribute with the other members thereof, in making good what they may lose in consequence of the demands of individuals, who stand in the predicament of Mrs. Gilman, for their proportion of the indemnity actually awarded to those whose certificates of land on the New-England Company were adjudged to be valid.

An objection was made by the respondent to the want of parties; but the conclusion to which the Court has come renders it unnecessary to give any opinion on this point. The Court, however, would have hesitated in making any decree against Mr. Jackson in the absence of his principals in whose favour the award was made, and who ought, if its merits were examinable, to have been afforded an opportunity of vindicating the grounds on which it was made.

It is the judgment of this Court, that the decree of the Circuit Court dismissing the appellants' bill, be affirmed with costs.

Decree affirmed with costs.