## Woodruff and Stocking *vs.* Fisher and others.

A., B. and C. were appointed by statute, commissioners to drain certain wet lands, so as to remove the cause of sickness ; and pursuant to the act, made and filed maps of a river and the lands they found it necessary to enter upon, which they proposed to drain, and also, in pursuance of the provisions of the statute, presented to the court an estimate of the cost of removing obstructions to the free course of the water.  In that estimate was an item, "for removing dam at Dayton Falls, $100."  Thereupon commissioners were appointed by the court to appraise the damages of the owners.  Afterwards, the first commissioners procured an admeasurement and came to a conclusion that it was not necessary to remove the dam, but that it would be sufficient to lower it three feet.  The commissionners to appraise, decided that they were bound to appraise the damages that the owner of the dam would sustain by its entire removal.  The plaintiffs, who were liable to be assessed to pay a large portion of the damages that the owners might sustain, procured an amended estimate from the first commissioners, which the court refused to receive ; and then they commenced this suit against both sets of commissioners and the owners of the dam, to enjoin the latter from claiming, before the commissioners, more damages than would accrue by lowering it three feet, and to enjoin the commissioners from appraising the damages, except upon that basis, and not for the entire removal, and praying that the first commissioners should make a new estimate ; and that a temporary injunction should issue to prevent an appraisal until the further order of the court, and for further relief.  The plaintiffs having obtained a preliminary injunction, which was allowed by a judge at chambers, *the injunction was dissolved, upon the complaint.*

*It seems*, that the plaintiffs had sufficient interest to entitle them to be parties, if the suit was otherwise sustainable.

Whether the members of the court in these special cases act as commissioners, or as a court of law, in a summary way, their powers are wholly derived from the statute.

Nor have the commissioners any powers except what are conferred by the statute, which they must strictly pursue.

The commissioners in this case had no authority to present to the court, nor the court to receive, a second estimate of the expense.

The discretion given to public agents in these cases cannot be controlled, or aided, by a court of law or equity.

If they exceed their powers, they may become trespassers, and if the act they are about to commit may produce great and irreparable injury, they may, like other trespassers, be restrained.

And so, if in the execution of what they conceive to be their duty, they occasion a public nuisance.

An injunction will sometimes be allowed, to prevent a multiplicity of suits.

Woodruff *v.* Fisher.

Whether lands can be drained against the will and at the expense of the owners, to remove the cause of sickness, if the inhabitants afflicted do not reside on the land; and the lands will not be benefited thereby ?  *Quære.*

Owners of wet lands are not guilty of a public nuisance because they neglect to drain them.

Although estimates by commissioners to drain wet lands are to be presented to the court in a particular judicial district, and commissioners to appraise damages are to be appointed by the same, that does not affect the general jurisdiction of the court in a suit; nor the power of a judge in any other district to allow an injunction.

Nor is it an objection to such suit, or to such allowance, that the wrong county is designated as the place of trial.

As a general rule, an injunction will not be allowed upon mere information and belief. But the usual verification is sufficient, if the allegations relied upon as sufficient grounds for granting an injunction are stated positively in the complaint, even though other allegations in the complaint are stated on information and belief. Nor is a separate affidavit required in such cases.

Where the motion for an injunction is for causes existing at the commencement of the suit, and those are fully set out in the complaint, under positive allegations, and an injunction is demanded in the complaint duly verified, an affidavit is unnecessary. An affidavit, however, is generally necessary, if the cause for an injunction arise during litigation.

A motion to dissolve an injunction allowed by a judge at chambers, may be made directly to the court, without first applying to the same judge to dissolve or revoke it.

THIS was a motion to dissolve an injunction granted by a judge at chambers, upon the complaint, verified as follows: "Jefferson county, ss. Norris M. Woodruff, one of the above named plaintiffs, being duly sworn, deposes and says, that he has heard read the foregoing complaint and knows the contents thereof, and that the same is true of his own knowledge except as to the matters therein stated on his information and belief, and as to those matters he believes it true." Sworn, &c. The action was brought against Archibald Fisher, Lawrence H. De Long, and Abel P. Morse, commissioners appointed to remove certain obstructions in Indian river; Henry L. Knowles, William A. Dart and Joseph Barnes, commissioners appointed by the legislature to appraise the damages sustained by removing certain obstructions in Indian river, by virtue of chap. 234 of the laws of the state of New-York, for the year 1852; George

Parish, Andrew Laidlaw and William B. Bostwick. By the complaint it appeared that the commissioners appointed by the first section of the act, entitled "an act to provide for the promotion of public health by draining certain swamp lands on the Indian river, in the towns of Therese and Rossie," ch. 234, Laws of 1852, had made a map, as required by the act, and ascertained and determined, that to accomplish the purposes of the act, it would be necessary to reduce the waters of Indian river three feet, and the several obstructions in the river sufficient for that object; but did not measure to ascertain the number of feet or inches it would be necessary to reduce the obstructions so as to lower the water three feet. That in pursuance of said act, said commissioners made an estimate of the expense of removing said obstruction, to be presented to the supreme court, which was signed by two of the commissioners, De Long and Fisher. (It was not dated.) That was an "estimate of the cost of removing the ledge of rocks in the bed of Indian river at the smelting works, so called, in the town of Rossie, in the county of St. Lawrence, to the depth of five feet for the whole width of the river, and also for removing floodwood and bars above said ledge and dam below said ledge at the Dayton Falls, according to the act passed April 12, 1852." The whole amount was $2625, of which one item was "for removing dam at Dayton Falls, $100." That on presenting the estimate to the court in the fourth judicial district, having complied with the other conditions of the act, Henry L. Knowles, William A. Dart and Joseph Barnes were appointed by the court commissioners to appraise the damages of the owners of the land in removing the obstructions, who had apppointed a time (17th Nov. 1852) and place to hear the proofs and allegations of the parties on that question, at which time and place the plaintiffs and the defendants, Parish, Laidlaw and Bostwick appeared, and Laidlaw and Bostwick gave evidence before them as to damages, and it appeared they were tenants for a term of years of certain hydraulic works supplied with water by the dam at Dayton Falls, under a lease from the defendant Parish, the owner in fee. That Bostwick and Laidlaw claimed to recover damages on the principle that the dam at

Woodruff v. Fisher.

Dayton Falls was to be wholly removed and the water power wholly destroyed. The plaintiffs objected to such evidence and to the appraisal of damages upon that principle, and insisted and offered to show, that it was only necessary to remove the dam three feet, to so drain the lands as required by the act, which would leave an available water power with 6 feet 4 inches head and fall. But the defendants Laidlaw and Bostwick and Parish insisted that the act contemplated the removal, and that commissioners named in the first section had no power or right to lower the dam, and had made their estimate for its removal, which was the only guide to the present commissioners in estimating the damages; and the commissioners so decided, and also decided they should appraise the damage by an entire removal of the dam, and rejected the evidence that it was not contemplated or necessary. That an adjournment was given, to enable the plaintiffs to apply to this court for leave to file an amended or supplementary estimate, stating correctly the extent to which the commissioners deemed it proper to lower the dam. That the commissioners appointed by said first section, before this meeting, had caused an examination and measurement to be made of the dam, and other obstructions in the river, and ascertained it was only necessary to lower the dam three feet to accomplish the object of the act, leaving it 6 feet 4 inches; and up to that time it had not been ascertained or known whether the dam would have to be removed or lowered, and that the expense of removing the dam was put in the estimate filed in the supreme court, only, because the removal of the dam was mentioned in the act, and they had not at all considered whether the dam should be removed or lowered; and that $100 was deemed sufficient to make any alteration in the dam that might be necessary on a more full survey, and the only point settled was the reduction of the water in the river three feet, and that the removal of the obstruction should be made to accomplish that object. The complaint further alleged that the plaintiffs had caused an application to be made to the supreme court, in the fourth district, for leave to the commissioners to file an amended or supplementary estimate of the expense of removing the

Woodruff *v.* Fisher.

ledge of rocks and bed of Indian river at the smelting works, &c. This estimate was like the other, except this clause: "lowering the dam at Dayton Falls 3 feet, so that the top of said dam will be 6 feet 4 inches above the bottom of the apron below the wheel now in use in the mill at said dam, $100." That application was made upon the petition of two of the commissioners, setting forth the above facts, and on an affidavit of the plaintiffs' agent; which motion was denied. The complaint then alleged that the plaintiffs owned a large tract of land in Jefferson county, which is now flowed, and is to be drained by the act, and by virtue of which they are bound to pay the largest share of the damages which may be assessed to the parties injured by removing the obstructions, and that it was unnecessary to lower the dam more than three feet to accomplish the purposes of the act, after which Parish and his lessees would still retain a valuable water power; and to remove the dam would increase the amount of damage to be paid by the plaintiffs and others, which increase of damages was wholly useless and unnecessary. That the hearing was postponed; and at the adjourned day, unless the court interfered, the commissioners would appraise on the principle of removal of the dam; and the difference in damage would be at least $1000. The demand of judgment was, that Parish, Bostwick and Laidlaw be perpetually enjoined from demanding and claiming before the commissioners more damages on account of the dam at Dayton Falls than might accrue by lowering the dam so that the top would be 6 feet 4 inches above the apron, &c., and that the commissioners named as defendants be perpetually enjoined from estimating or allowing damages for or on account of said dam, except on the basis above stated; that a temporary injunction issue to restrain the defendants from proceeding to appraise the damages under the act until the further order of the court; that the first commissioners appointed by the act be decreed to make an estimate of the expense of removing and lowering said obstructions in accordance with the requirements of said act, and as they had determined and decided the same should be made, and for costs

Woodruff v. Fisher.

of the action against Parish, Laidlaw and Bostwick, and for further relief.

*C. G. Myers*, for the defendants.

*A. B. James*, for the plaintiffs.

HAND, J. A few preliminary objections have been made on both sides, which should be first noticed. If the plaintiffs showed sufficient cause, a judge in the fifth judicial district had authority to grant the injunction. Although the estimate of expense was to be presented, and the commissioners to appraise damages, &c. appointed by the court in the fourth judicial district, that does not affect the question of jurisdiction, in a suit brought in relation to the subject matter of the act. (*And see Code*, § 401.)

It is said the venue ought not to have been laid in Jefferson county, because the commissioners of appraisal were of officers and residing in, the county of St. Lawrence ; but that question does not arise now. If the place of trial designated is wrong, the defendants should demand a change. (*Code*, § 126.)

The verification is in the ordinary form. An injunction, as a general rule, will not be allowed upon mere information and belief. (*Campbell* v. *Morrison*; 7 *Paige*, 160. *Bank of Orleans* v. *Skinner*; 9 *Id.* 305. 1 *Barb. Ch. Pr.* 617.) But in this case the allegations relied upon as sufficient grounds for granting the injunction, are stated positively in the complaint, and not on information and belief. The verification is, therefore, also of his own knowledge as to those matters.

Nor was a separate affidavit necessary. The positive verification of a complaint is tantamount to an affidavit; and it would be merely supererogatory to repeat the same matter in the form of an affidavit. There has been some difference of opinion upon this point. (*Whitt. Pr.* 680, 1.) But I think the true construction of sections 219 and 220 of the code is, that if the motion for an injunction is for causes existing at the commencement of the suit, and those are fully set out in the complaint, under positive allegations, and an injunction demanded therein, the ordi-

nary verification of the complaint is sufficient. If the cause for an injunction arise during litigation, then, as a general rule, there must be an affidavit.

The objection of the plaintiffs, that this motion should have been first made to a judge, is also untenable. Such was not the old practice, and sec. 225 of the code authorizing an application to a judge out of court, is merely permissive and does not abridge the general jurisdiction of this court. A motion to dissolve an injunction, made directly to the court, was the former practice; and, although it was usual to apply to the judge granting certain orders in suits at law, to vacate them, this court has power, both in suits at law and in equity, to vacate any order made in a cause by a judge out of court. (1 *Barb. Chan. Pr.* 637. *Minturn* v. *Seymour,* 4 *John. Ch.* 173. *Newbury* v. *Newbury,* 6 *How. Pr. R.* 182. 3 *Danl. Pr.* 1895. *Gould* v. *Root,* 4 *Hill,* 554. *Hart* v. *Butterfield,* 3 *Id.* 455. *Ryckman* v. *Parkins,* 9 *Wend.* 470. *Barney* v. *Keith,* 6 *Id.* 555. 1 *Burr.* 350. 3 *Chit. G. Pr.* 33. *Lindsay* v. *Sherman,* 5 *How. Pr. R.* 308. *Blake* v. *Locy,* 6 *Id.* 108. *Code,* § 324. *Jud. Act,* § 16.) Counsel on the argument relied upon the case of *Snyder* v. *Olmstead,* (1 *How. Sp. T. R.* 194.) It is there reported, that the court refused to hear an application to revoke an order to deposit books, &c., because it should have been first made to the officer granting it, notwithstanding the express provisions of the statute. (2 *R. S.* 199.) But I have no doubt the court may, in the first instance, in its discretion, hear motions to vacate orders. And if there were doubts as to some kinds of orders, I find no statute, rule or decision, abrogating the old practice in this respect, as to motions to the court to dissolve an injunction. This brings us to the merits of the motion.

I am inclined to think, if the suit can be sustained upon other grounds, that the plaintiffs have such an interest as entitles them to sue. It is true the commissioners are to assess the expense and damage upon the lands to be drained, in proportion to the benefit to those lands; and the amount that may be assessed upon the lands of the plaintiffs, depends upon the judgment of the commissioners as to the amount of that benefit, and must as

yet be altogether uncertain. But the plaintiffs aver that they own large tracts of the land to be drained, and are bound to pay the largest share of the assessment, which last allegation, for the purposes of this motion, must be taken as true, so far as it is possible for them to know that fact.

If the object to be accomplished by this statute may be considered a public improvement, the power of taxation seems to have been sustained upon analogous principles. (*People* v. *Mayor of Brooklyn*, 4 *Comst.* 419, 607, *et seq. and cases there cited by court and counsel. Thomas* v. *Leland,* 24 *Wend.* 65. *Livingston* v. *Mayor of N. York,* 8 *Id.* 101.) But if the object was merely to improve the property of individuals, I think the statute would be void, although it provided for compensation. The water privileges on Indian river cannot be taken or affected in any way, solely for the private advantage of others, however numerous the beneficiaries. Several statutes have been passed for draining swamps, but it seems to me that the principle above advanced, rests upon natural and constitutional law. The professed object of this statute is to promote public health. And one question that arises is, whether the owners of large tracts of land in a state of nature, can be taxed to pay the expense of draining them, by destroying the dams, &c. of other persons away from the drowned lands, and for the purposes of public health ? This law proposes to destroy the water power of certain persons against their will, to drain the lands of others ; also, for all that appears, against their will ; and all at the expense of the latter, for this public good. If this taxation is illegal, no mode of compensation is provided, and all is illegal. If all is void, the plaintiffs cannot complain unless some act is done by which they actually suffer damage.

The owners of these lands could not be convicted of maintaining a public nuisance because they did not drain them; even though they were the owners of the lands upon which the obstructions are situated. It does not appear by the act or the complaint, that the sickness to be prevented prevails among inhabitants on the wet lands, nor whether these lands will be benefited or injured by draining ; and certainly, unless they will

be benefited, it would seem to be partial legislation, to tax a certain tract of land, for the expense of doing to it what did not improve it, merely because, in a state of nature, it may be productive of sickness. Street assessments are put upon the ground that the land assessed is improved, and its value greatly enhanced.

However, it is by no means clear that this case does not come within the reasoning of the opinion delivered in the *People* v. *Mayor, &c. of Brooklyn,* (*supra.*) And, perhaps, after such an act of the legislature, we are to presume the work will be beneficial to the owners of the lands.

This suit is an equitable one, and although legal and equitable actions are, to a degree at least, blended as to form, principles remain the same ; and this court will not interfere by injunction where our former court of chancery would not, unless expressly authorized to do so by statute. At the last general term in this district, we decided that we had no power to receive from the commissioners a second estimate, under the 4th section of the act ; that one having been presented to the court and the commissioners of appraisal appointed, we had no further jurisdiction over the matter.

It is not important whether we act as commissioners or as a court, in these special cases. (*Embury* v. *Conner,* 3 *Comst.* 523. *Sriker* v. *Kelly,* 2 *Den.* 323. *In re Beekman-street,* 20 *John. R.* 269. *Stafford* v. *Mayor of Albany,* 7 *John. Rep.* 541. *Matter of Mayor of New-York,* 6 *Cow.* 571. *Matter of Canal-street,* 11 *Wend.* 154. *Matter of Mount Morris Square,* 2 *Hill,* 14.) All the authorities agree that, whether we act as commissioners, or as a court of law in a summary way, our powers are wholly derived from the statute, and our acts must be treated in many respects like those of a court of limited and special jurisdiction. (*Id.*) Our interference is not by common law process, but by a mode given by statute ; and that does not provide for the presentation of a second estimate. (*Matter of Mount Morris Square,* 2 *Hill,* 14. *Stafford* v. *Mayor, &c. of Albany,* 7 *John. R.* 541. *Matter of Mayor, &c. of New-York,* 6 *Cow.* 571. *Matter of Beekman-street, supra.*) And it is equally

well established, that the commissioners also have no power, except what is conferred by the statute, which they must strictly pursue. (*Mayor of Brooklyn* v. *Meserole*, 26 *Wend.* 132. *Belknap* v. *Belknap*, 2 *John. Ch. R.* 463. *Squire* v. *Campbell*, 1 *My. & Cr.* 459. *Matter of Mount Morris Square*, 2 *Hill*, 14. *Speer* v. *Crawter*, 17 *Ves.* 216, 224. *Trewin* v. *Lewis*, 4 *My. & Cr.* 255. *Matter of Beekman-street*, 20 *John. R.* 271. And see *Kendall* v. *U. S.*, 12 *Pet.* 524.)

The object to be accomplished under the act, as appears by its provisions, is to drain certain wet lands, to remove the cause of sickness, so far as may be, thereby. For this purpose the act provides, that all the obstructions to a free course of the water through or below these wet lands, that are above, and three-fourths of a mile below the ledge at the smelting works, are to be removed; and the ledge itself to the depth of five feet, the whole width of the river, and the dam at Dayton Falls; if, in the opinion of the commissioners appointed by the act, it should be necessary for that purpose. The commissioners had a discretionary power, at least, as to the ledge and the dam. They were also to cause to be made and filed, maps of so much of the river and low lands as they found it necessary to enter upon, and proposed to drain; and to cause to be made and presented to this court in the fourth district, a careful estimate of the costs of removing the ledge and other obstructions. And after the court should have received the return of the commissioners appointed by it to estimate the damage of the owners of property, and a copy thereof should have been furnished to the said first commissioners, the latter were to assess those damages and costs of removing the obstructions upon the lands in Jefferson county drained by such removal, in proportion to the benefit received thereby. This assessment was also a matter of discretion and judgment.

The counsel for the plaintiffs, in his points, admits that the commissioners to appraise the damages were right in adopting the principle of assessment upon the basis of a removal of the dam; and insists the fault is with the first commissioners and the other defendants; and the complaint states that the court had not,

before filing that estimate, caused the proper examination to be made, but had since done so ; and have ascertained that a partial removal of the dam, which will produce much less damage, will be sufficient ; and asks to have the estimate or plan so corrected by the commissioners.   The commissioners to appraise damages must be informed of what the commissioners appointed by the act have resolved to do ; and I agree with the counsel of the plaintiffs, that in the absence of any other evidence of that resolution, the maps and the estimate of expense of removal, are to be the guide.   The plaintiffs ask for an injunction to prevent the appraisal until the further order of the court.   But what can be gained by an injunction ?   The commissioners, deriving their powers from the statute, and having made and filed the maps and presented the estimate, are so far *functus officio.* Equity cannot raise their powers.   It is alleged that the plaintiffs may have to pay $1,000 for a needless and useless destruction of property, in consequence of this mistake or neglect of duty ; and that the constitution will not permit private property to be taken unnecessarily.   Perhaps these public agents, in some cases, may be liable to indemnify persons injured. (*Speer* v. *Crawter,* 17 *Ves.* 216.)   But in this suit we are not authorized to inquire into the facts.   The commissioners have once acted, and it seems admitted that they cannot now revise their estimate.   If they can, the remedy is not in equity.   They must do it voluntarily, or be compelled by a different proceeding.   If they say or admit that they have been negligent, or have changed their opinion, still chancery cannot interfere.   Indeed, their discretion cannot be controlled or aided, at law or in equity. (*King* v. *Poor Law Com.,* 6 *Ad. & E.* 1.   *Same* v. *Same, Id.* 36. *Same* v. *Same, Id.* 54.   *Walker* v. *Devereux,* 4 *Paige,* 229. *Matter of Mount Morris Square, supra.* 3 *Dan. Pr.* 1881. *Wiggin* v. *Mayor of New-York,* 9 *Paige,* 20.   *King* v. *Mayor of London,* 3 *B. & Ad.* 255.   *Att'y General* v. *Southampton R. Co.,* 9 *Sim.* 86.   *Philips* v. *Wickham,* 1 *Paige,* 590. *Patterson* v. *Mayor, &c. of New-York, Id.* 114.)

It seems that in those cases, where the statute points out the duty of this court (as a court of law) in relation to persons so

Woodruff *v.* Fisher.

clothed with special powers, a court of equity has no jurisdiction. (*Mayor, &c. of Brooklyn* v. *Meserole,* 26 *Wend.* 139. *Mooers* v. *Smedley,* 6 *J. C. R.:* 28. *Van Doren* v. *Mayor, &c. of New- York,* 9 *Paige,* 388. *Frewin* v. *Lewis,* 4 *My. & Cr.* 249. *And see Kerrison* v. *Sparrow,* 19 *Ves.* 449. *Le Roy* v. *Corp. of New- York,* 4 *J. C. R.* 352. *Champlin* v. *Mayor, &c. of New- York,* 3 *Paige,* 573. *Brower* v. *Jackson,* 7 *Wheat.* 218.) *Mayor of Brooklyn* v. *Meserole* was decided in the court of errors, and settles the law in this state. Some of the cases appear to have gone further. (*Frewin* v. *Lewis, supra; S. C.,* 9 *Sim.* 66. *Speer* v. *Crawter,* 17 *Ves.* 216. *Note to Kerrison* v. *Sparrow, supra.. Couch* v. *Ulster & O. Tur. Co.* 4 *J. C. R.* 26. 2 *Stor. Eq. Jur.* § 955, a. *Rooke's case,* 5 *Rep.* 100.) But the question is at rest here. And *Couch* v. *Ulster & O. Tur. Co.* was against a corporation, and in its nature private; and *Frewin* v. *Lewis* yielded to the cases in *Adolphus & Ellis.*

If the commissioners usurp powers not given by the act, they may become trespassers ; and if the act they are about committing will produce great and irreparable injury, they may be restrained as other trespassers. (*Mayor of Brooklyn* v. *Meserole,* 26 *Wend.* 140. *Belknap* v. *Belknap,* 2 *John. C. R.* 463. *Clowes* v. *Beck,* 7 *Eng. L. and Eq.* 42.) And so, it is said, if they so execute what they conceive to be their duty, as to occasion a public nuisance, they may be restrained. (*Attorney General* v. *Forbes,* 2 *My. & Cr.* 132 *et seq.*) Though they will not be guilty of a public nuisance, if they do not go beyond their authority. And equity may be invoked to prevent a multiplicity of suits. (*Mayor, &c. of Brooklyn* v. *Meserole, supra. Sutton Harb. Imp. Co.* v. *Hitchins,* 9 *Eng. L. and Eq.* 41.) But none of these exceptions cover this case, and whatever may have been formerly considered the rule, now I think it is quite clear, that this injunction cannot be sustained. Considering how little courts can control the action of such public agents, it would be singular if any person, fearing he may be aggrieved, may, upon their admission that they had been negligent, sue

them and put a stop to, the public improvement placed under their supervision.

The injunction must be dissolved with costs.

Ordered accordingly.

[St. Lawrence Special Term, February 21, 1853. *Hand*, Justice.]